UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CORNISH,<br><br>   Petitioner,<br><br>  v.<br><br>ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>   Respondent. | No.  2:12-cv-2460-MCE-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him on July 16, 2010 in the Sacramento County Superior Court on charges of attempted murder and discharge of a firearm, with firearm use enhancements.  He seeks federal habeas relief on the ground that his trial counsel rendered ineffective assistance by failing to investigate and present a defense of voluntary intoxication.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

/////

1

On the night of March 12, 2008, defendant Jesse Cornish shot Jabarie Mike in front of Mike's home and continued firing as Mike retreated into his residence. Defendant was convicted of attempted murder (Pen. Code, §§ 664/187, subd. (a)) and discharging a weapon at an inhabited dwelling (Pen. Code, § 246).[1] The jury also found that defendant personally used and discharged a firearm (§§ 12022, subd. (b)(1), 12022.53, subds. (b), (c) & (d)) and caused great bodily injury (§ 12022.7, subd. (a)). The trial court sentenced defendant to an aggregate term of 32 years to life in state prison.[2]

\* \* \*

Defendant shot Mike as the result of a verbal altercation between Mike and defendant's girlfriend, Arika Shaw. Mike worked with Shaw at an Applebee's restaurant in Elk Grove. On March 11, 2008, Mike complained to Shaw about a coworker, Kjerstie Montgomery. When Shaw defended her, Mike stated she should not be so quick to do so because Montgomery was not a good friend to Shaw. In support of his claim, he related that Montgomery inappropriately had shared with him a confidence about Shaw's sex life. Shaw became angry with Mike and went outside. Defendant was in the parking lot waiting to pick up Shaw when her shift ended. Shaw told defendant about the altercation and then went back inside.

Mike left to run an errand. Defendant confronted him and asked if he had a problem with Shaw. Mike denied having a problem and cut off the conversation to go run his errand. Shaw finished her shift and left work with defendant. Thereafter, Mike telephoned her repeatedly and complained about defendant's conduct. Mike said he wanted to fight defendant and Shaw hung up on him. Mike called back again and defendant took the phone from Shaw and spoke with him. Mike yelled at defendant about the confrontation at work but defendant remained calm.

Thereafter, defendant decided he wanted to fight Mike, asked Shaw to show him where he lived, and she complied. When they arrived at Mike's house, defendant pulled out a gun, claiming it was only for self-defense if necessary. Defendant got out of the car but then changed his mind about fighting with Mike, telling Shaw he did not "want to do that in front of [her]."

The next night, Mike worked the night shift with Shaw and Montgomery, and the atmosphere was "flat." Montgomery told Mike her boyfriend had just been released from jail and Mike should not have "opened up [his] mouth." Mike also felt threatened by defendant's conduct the day before. Because he feared for his safety, Mike called his girlfriend's brother, Frederick Coner, to come to

---

[1] Undesignated section references are to the Penal Code.

[2] We note that the recent amendments to sections 2933 and 4019 do not apply to defendant because he was convicted of violent and serious felonies. (§§ 667.5, subd. (c), 1192.7, subd. (c), 4019, former subds. (b)(2) & (c)(2) [as amended by Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 28, § 50], 2933, subd. (e)(3) [as amended by Stats. 2010, ch. 426, § 1, eff. Sept. 28, 2010].)

Applebee's and escort him home after work. Coner arrived and the two men drove to Mike's home in their respective cars after Mike's shift ended around 9:00 p.m.

Mike lived nearby in a house he shared with his girlfriend, her mother, and three other people. When Coner decided to leave he discovered his car would not start. Around 10:30 p.m., Mike was helping Coner jump his car battery when he noticed a small red car do a U-turn and stop across the street. Two men exited the car and approached Mike, who was still wearing his Applebee's uniform. One of the men, who Mike later identified as defendant, had a "mean mug" expression. Defendant walked toward Mike, raised his arm, and began firing the gun he was holding. Mike turned and ran towards the house, but was shot through the thigh before he reached safety. Defendant continued shooting at the house after Mike went inside.

Neighbors heard multiple gunshots about 10:30 p.m., witnessed a red car speeding away, and called 9-1-1 to report a shooting. When the police responded, they found Mike wounded and several slugs in the structure of the house.

Mike spoke briefly with the police before being transported to the hospital and spoke with them again at the hospital. He did not remember exactly what he said because he was in pain and in shock. Mike recalled telling a police officer that a light skinned black man shot him and he was accompanied by a Hispanic male. At that time he did not tell the police he thought the shooter was defendant. However, when a detective visited him at home midday the next day, Mike told the detective that he thought Shaw's boyfriend shot him and that if he saw him he could identify him. A few days after the shooting, Mike viewed a photographic lineup and selected defendant as his assailant. Mike could not identify the man who accompanied defendant, and Coner was unable to identify anyone from the lineup. At trial, Mike adamantly identified defendant as his assailant.

Detectives Sanchez and Bearor questioned defendant, who waived his Miranda rights. Defendant denied shooting Mike and claimed he did not know where he lived. Defendant stated that on the night of the shooting, he drove from his mother's house in Rancho Cordova to the Applebee's in Elk Grove to return Shaw's car around 7:00 p.m. Then he went to Fresno with his brothers, Meshach and Ammiel, and Ammiel's girlfriend in her car. According to defendant, a trip to Fresno takes about 90 minutes. When they reached Fresno, they ran a few errands for about 30 minutes before returning to his mother's house in Rancho Cordova. They arrived back about 10:00 or 10:30 p.m. Defendant called Shaw around 10:40 p.m. and asked her to pick him up after her shift ended. Defendant stated he had his cell phone with him during the trip.

Cell phone records and signals from nearby cell phone towers indicated that defendant did not go to Fresno. Rather, Shaw called defendant when Mike left the restaurant around 9:00 p.m., after which defendant's cell phone (and presumably defendant) traveled from Rancho Cordova to Elk Grove. Defendant was in the vicinity of Mike's house when Mike was shot. Defendant then traveled back to Rancho Cordova.

3

Defendant's mother, Priscilla Cornish, owns a red Hyundai and Mike's assailants were in a small red car. Cornish works at an assisted living facility in El Dorado Hills. Her work shift is four days, for 24 hours a day, beginning on Wednesday and ending on Sunday. Cornish testified that sometimes one of her 16 children would drive her to work in her car and then pick her up several days later when her shift ended. According to Cornish, she drove herself to work on Wednesday, March 12, 2008. According to Cornish's supervisor, however, the red car was not parked at the facility on Thursday morning and she did not see it until she arrived at work on Friday morning. Defendant's cell phone records indicate he went to El Dorado Hills on the evening of Thursday, March 13.

Shaw, who pleaded guilty to being an accessory after the fact, testified as a prosecution witness pursuant to the terms of her plea agreement. Shaw related her verbal altercation with Mike, admitted taking defendant to Mike's house the night before the shooting, and testified defendant had a gun. She stated that defendant came with her to work on March 12 and his brother followed in their mother's red Hyundai. Defendant wanted to confront Mike but Shaw told them, "This is my job. Take it somewhere." Defendant left with his brother, but subsequently contacted Shaw and asked her to let him know when Mike left the restaurant. Shaw did so and then became concerned when she heard sirens, saw "cop cars flying on the freeway," and she received a text telling her to erase all of her messages.

Shaw went to defendant's house in Rancho Cordova around 11:30 p.m., after her shift ended. She was waiting for defendant outside in her car when he suddenly appeared next to her car. They went inside, where around 10 people had gathered and were all "amped." Shaw and defendant left and went to her house. Shaw did not know that Mike had been shot and defendant did not mention it. The next day, Mike told her about the shooting and said he thought defendant was the assailant.

ECF No. 13, Opinion at 1-3.

Petitioner subsequently raised his ineffective assistance of counsel claim in a petition for writ of habeas corpus filed in the California Superior Court. ECF No. 1 at 30-31, Opinion dated Mar. 26, 2012. The Superior Court denied the petition, reasoning as follows:

A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case. (*In re Bower* (1985) 38 Cal.3d 865, 872.) A petition should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (*In re Avena* (1996) 12 Cal.4th 694, 722.) Actual

4

prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)  To evaluate a claim of failing to investigate a possible defense, a court must examine the reasonableness of the investigation in light of counsel's actual strategy. (*In re Lucas* (2004) 33 Cal. 4th 682, 725.)  It is not sufficient for a petitioner to show that counsel could have conducted a more thorough investigation.  The more important issue is whether it was reasonable to "forgo further investigation in light of the defense strategy counsel ultimately adopted." (*In re Andrews* (2002) 28 Cal.4th 1234, 1255.)

Petitioner's 2010 conviction of attempted murder, discharge of a firearm, and firearm use enhancements was affirmed on appeal in August 2011 and became final in November 2011.  Petitioner now claims that although he informed trial counsel that on March 12, 2008, the date of the charged offenses, he had been heavily abusing alcohol, marijuana and PCP, counsel did not investigate or present any evidence of Petitioner's intoxication.  He further states that using those substances often rendered him unable to recall what he had done or where he had been.  In addition to his own declaration, he has attached the declarations of two potential corroborating witnesses, Harvey Alvarez and Keith Gibson.  Alvarez and Gibson state that they were with Petitioner at Petitioner's mother's home in Rancho Cordova on March 12 and that Petitioner consumed large amounts of alcoholic beverages and smoked marijuana and PCP in the afternoon and up until approximately 9 or 9:30 p.m., which would have preceded the 10:30 p.m. shooting.  Petitioner argues that evidence of voluntary intoxication would have been relevant to disprove intent to commit attempted murder.

Petitioner fails to acknowledge that he initially told detectives that he was in Fresno at the time of the shooting, but that his cell phone records indicated that he was in the vicinity of the victim Jabarie Mike's residence in Elk Grove, where and when Mike was shot.  Due to the absence of witnesses who could corroborate Petitioner's alibi and the contradictory cell phone records, counsel adopted a defense of misidentification based on Mike's failure to immediately identify Petitioner at the hospital and a witness's inability to identify any perpetrators from a lineup.  Petitioner now proposes that instead of the defense of mistaken identification, defense counsel should have presented a defense of voluntary intoxication.  First, the mere fact that counsel did not present the defense does not mean that he failed to investigate the defense.  As with the defense of alibi, counsel may [have] determined that it was not reasonable to pursue that defense.  Second, even if counsel's failure to investigate and/or present evidence was unreasonable, Petitioner has not shown that he was prejudiced.  At trial, Mike "adamantly" identified Petitioner as the perpetrator; Petitioner's then-girlfriend testified about Petitioner's verbal altercation with Mike, showing Petitioner where Mike lived, and telling Petitioner she did not want him to confront Mike at her workplace on the day of the shooting; and according to the opinion on appeal, "the evidence of [Petitioner's] guilt was overwhelming."  Given the evidence of Petitioner's conduct and motive, he has not shown that counsel's conduct resulted in prejudice to his case.

*Id.* Petitioner subsequently raised his ineffective assistance of counsel claim in petitions for a writ of habeas corpus filed in the California Court of Appeal and California Supreme Court. ECF Nos. 14, 18 ("Lodged Docs.") 14, 16. Those petitions were summarily denied. *Id.*, Nos. 15, 17.

**II.    Analysis**

    **A.    Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S. Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

1         A state court decision is "contrary to" clearly established federal law if it applies a rule

2 contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

3 precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

4 Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

5 writ if the state court identifies the correct governing legal principle from the Supreme Court's

6 decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]  *Lockyer v.*

7 *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

8 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

9 court concludes in its independent judgment that the relevant state-court decision applied clearly

10 established federal law erroneously or incorrectly.  Rather, that application must also be

11 unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

12 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

13 review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

14 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

15 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*

16 *Richter*, 562 U.S.___, ___, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541

17 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

18 court, a state prisoner must show that the state court's ruling on the claim being presented in

19 federal court was so lacking in justification that there was an error well understood and

20 comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

21 S. Ct. at 786-87.

22         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

23 court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

24 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

25 (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

§ 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### B.    Petitioner's Ineffective Assistance of Counsel Claim

Petitioner claims that on the day of the shooting, he "had been engaged in the heavy use of alcohol, marijuana, and PCP . . . ." ECF No. 1 at 14.[2] He claims he was "so intoxicated" that he "could not clearly recall" the events of the day, and that he so informed his trial counsel. *Id.* Petitioner's claim for federal habeas relief is that his trial counsel rendered ineffective assistance in failing to investigate and present evidence of his voluntary intoxication. *Id.* at 4. Petitioner argues that such evidence could have negated the intent element on the attempted murder charge. *Id.* at 17.

The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 131 S. Ct. at 789. Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

---

[4] Page number citations refer to those assigned by the court's electronic case management system.

9

possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." *Hendricks v. Calderon*, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted). *See also Porter v. McCollum*, 558 U.S. 30, ___, 130 S. Ct. 447, 453 (2009) (counsel's failure to take "even the first step of interviewing witnesses or requesting records" and ignoring "pertinent avenues for investigation of which he should have been aware" constituted deficient performance). On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient. *See Siripongs v. Calderon*, 133 F.3d 732, 734 (9th Cir. 1998) (*Siripongs II*); *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998); *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" *Wiggins v. Smith*, 539 U.S. 510, 533 (200) (quoting *Strickland*, 466 U.S. at 691).

A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" *United States v. Chambers*, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting *Strickland*, 466 U.S. at 690). Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'" *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986)). *See also Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere")

Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 131 S. Ct. at 785. "[B]ecause the *Strickland*

standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

As set forth above, in considering his state habeas petition the Sacramento County Superior Court observed that petitioner initially set up an alibi defense by telling the detectives that he did not know where Mike lived and that he was in Fresno at the time of the shooting. Because this alibi could not be corroborated, trial counsel presented a defense of mistaken identity due to Mike's failure to immediately identify petitioner and another witness' inability to identify anyone involved in the shooting. The Sacramento County Superior Court concluded that, like the alibi defense, trial counsel may have determined that it was not tactically wise to present a voluntary intoxication defense, as it would have been inconsistent with the defense of mistaken identification. Given these circumstances, petitioner has not shown that trial counsel's decision to forego a voluntary intoxication defense amounted to deficient performance. *See Butcher v. Marquez*, 758 F.2d 373, 376-77 (9th Cir. 1985) (counsel was not ineffective in declining to request instructions that conflicted with petitioner's alibi defense).

The Sacramento County Superior Court also explained that "the mere fact that counsel did not present the defense does not mean that he failed to investigate the defense." ECF No. 1 at 30-31, Opinion dated Mar. 26, 2012. Further, the court reasoned that "even if counsel's failure to investigate and/or present evidence was unreasonable, Petitioner has not shown that he was prejudiced," citing to the "overwhelming" evidence of petitioner's guilt. *Id.* Indeed, there was ample evidence of petitioner's motive, intent, and conduct presented at trial. Petitioner's then girlfriend testified that prior to the shooting, petitioner learned about a problem between her and Mike and that petitioner got into a verbal altercation with Mike. Further, petitioner had decided on the night before the shooting that he wanted to fight Mike. He also found out where Mike

11

lived, and carried a gun to Mike's house. Mike also "adamantly" identified petitioner as the perpetrator at trial. *Id.* Thus, it is not reasonably probable that petitioner would have obtained a different result at trial had he presented a defense of voluntary intoxication and petitioner has not shown that counsel's conduct resulted in prejudice to his case. Accordingly, the state court's rejection of petitioner's ineffective assistance of counsel claim was reasonable and petitioner is not entitled to federal habeas relief.

### III.    Conclusion

For all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: April 9, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE